# Weller *et al. v.* City of Gadsden, *et al.*

*Bill in Equity to annul City Ordinance and for Injunction.*

1. *Municipal corporation; bill to annul city ordinance; injunction to prevent its enforcement and interference with franchise rights.*—Persons to whom a city, through its governing body, has granted a franchise to establish, own and maintain a public utility, and with whom such city has entered into a contract to be supplied by such persons from their plant, which contract is incorporated in the ordinance granting said franchise, cannot maintain a bill to have annulled and vacated an ordinance subsequently passed by said city repealing the ordinance granting the franchise, and enjoining its enforcement and restraining the city authorities from interfering with the holders of the franchise enjoying the rights thereunder, unless such persons aver in their bill facts showing that the ordinance is invalid, and that the city, through its servants or agents, is interfering with the enjoyment of the rights granted by the franchise, or that the threatened enforcement of the repealing ordinance is so imminent and great that the complainants' rights, as exercised under their franchise, are materially interfered with.

APPEAL from the City Court of Gadsden, in Equity.

Heard before the Hon. JOHN H. DISQUE.

The bill in this case was filed on July 22, 1903, by the appellants, W. H. Weller and R. A. Mitchell, against the City of Gadsden, Robert Campbell as Mayor of said city, and the Aldermen of said city, naming them. The facts averred in said bill, so far as are necessary to an understanding of the decision on the present appeal, are as follows: The complainants, Mitchell and Weller, were, on the 11th day of November, A. D. 1902, granted a franchise by the City of Gadsden to build, equip and operate a water works system, for the purpose of furnishing the city and its inhabitants with water.

The complainants were granted the right by said franchise to use the streets, avenues and alleys of the city, for the purpose of laying mains, pipes and conduits and erecting hydrants and fire plugs. The ordinance granting the franchise included a contract, on the part of the city, to take from complainants, when their water works was completed, a stated number of fire plugs at a certain rental per year. Complainants agreed to furnish the city with water free of charge for certain public buildings and fountains, and a stated amount for sprinkling the streets of the city. There are other stipulations in the contract which are not necessary to mention here.

The ordinance provided, that in consideration of complainants carrying out the stipulations set forth in the agreement, the city of Gadsden granted to appellants the exclusive franchise to use the streets, avenues and alleys of the city for a period of thirty years, to lay their mains, pipes and conduits and fixing a maximum rate at which water was to be furnished the city and its inhabitants.

By the terms of the ordinance contract, Mitchell and associates were to deposit with the clerk of the city council the sum of one thousand dollars to be forfeited upon failure to complete the water works plant within the time specified; the work of construction was to begin on or before January 1st, 1905, and to be completed and ready for use by the 31st day of December, 1905. Subsequent to the passage of the ordinance and before the filing of the bill in this cause a certified check for one thousand dollars was deposited with the city clerk as provided.

The ordinance by which the franchise was granted Mitchell and his associates was passed in November, 1902, next before the expiration of the term of office of the council passing it, which said term ended March 1, 1903.

In March, 1903, another Board of Mayor and Aldermen was elected. Before anything had been done by Mitchell and his associates in part of execution of the so-called contract, the city clerk, acting under instructions from the city council, tendered Mitchell one thous-

and dollars which had been previously deposited with him. A short while after the said thousand dollars had been tendered Mitchell, the Board of Mayor and Aldermen of the City of Gadsden, passed an ordinance repealing the ordinance by which Mitchell and associates had been granted the franchise hereinabove mentioned.

The appellants thereupon filed in the city court of Gadsden the present bill, the prayer of which was as follows: "That upon final hearing your honor will declare and decree the passage of said ordinance which attempted to repudiate said contract and to deprive orators of such use of said streets, avenues and alleys, to be null and void, and that you will therefore enjoin said city and said mayor and board of aldermen, their servants and agents, from the enforcement of said ordinance, and that you will further enjoin said city and said mayor and board of aldermen, their servants and agents, from depriving orators from such use of said streets, avenues and alleys, and of in any way hindering or interfering with orators such use of streets, avenues and alleys, and if in the relief especially prayed orators are in anywise mistaken, they pray that your honor will grant them such other, further and general relief as is right under the premises, and orators will ever pray."

The respondents demurred to the bill upon several grounds, and also moved to dismiss the bill for the want of equity.

On the final submission of the cause, there was a decree rendered sustaining the demurrers and the motion to dismiss the bill for the want of equity and the bill was accordingly dismissed.

From this decree the complainants appeal and assign the rendition thereof as error.

BURNETT, HOOD & MURPHREE, and DORTCH, MARTIN & ALLEN, for appellants.—"A city has two classes of powers—the one legislative, public, governmental, in the exercise of which it is a sovereignty and governs its people; the other proprietary, *quasi* private, conferred upon it, not for the purpose of governing its people, but for the private advantage of the inhabitants of the city and

of the city itself as a legal personality. In the exercise
of the powers of the former class it is governed by those
rules governing a public functionary, or agency of the
state. In their exercise it is ruling its people and is
bound to transmit its powers of government to its suc-
cessive sets of officers unimpaired. But in the exercise
of the powers of the latter class, it is controlled by no
such rule, because it is acting and contracting for the
private benefit of itself and its inhabitants, and it may
exercise the business powers conferred upon it in the
same way, and in their exercise it is to be governed by
the same rules that govern a private individual or cor-
poration.—*Trust & Sav. Bank v. the City of Ark. City,*
76 Fed. Rep. 282; *Gregsten v. City of Chicago,* 36 Am.
State Rep. 496.

"In contracting for water works to supply itself and
its inhabitants with water, the city is not exercising its
governmental or legislative powers, but its business or
proprietary powers. The purpose of such contract is
not to govern its inhabitants, but to obtain a private
benefit for the city itself and its denizens."—1 Dillon
on Mun. Corp. § 27; *Trust & Sav. Bank v. City of Ark.
City, supra.* As to the validity and obligations of such
contracts, the rule is stated thus "A municipality can
not abridge its legislative power by contract, and cannot
impair a contract by its legislative power; it cannot
make a valid contract beyond its power to contract, and
a contract made within its power of contract is valid."
*City of Indianapolis v. The Indianapolis Gas Light &
Coke Co.,* 66 Ind. 396; *New Orleans Gas Co. v. Louisiana
Gas Co.,* 115 U. S. 650; *Louisville Gas Co. v. The Citizen
Gas Co.,* 115 U. S. 683; *New Orleans Water Works v.
Rivers,* 115 U. S. 674; *St. Tammany Water Works v.
New Orleans Water Works,* 120 U. S. 64.

"The act of providing the city with water for fire pur-
poses pertained to the business powers, and not to the
governmental powers of the city council; and it had
*authority to bind the city* on that account for a resona-
ble time, if not for the whole period named in the ordi-
nance, and whatever was done in execution of the con-
tract will be referred to that power."—*City of Green-*

*ville v. Greenville Water Works,* 27 Sou. Rep. 764; 125 Ala. 627.

It was further insisted in the court below that, conceding the power of the city to supply itself and inhabitants with water, the exercise of it for so long a period as thirty years is unreasonable, and therefore the contract is void for that reason.   It will be noticed from all the authorities that where the power is lodged in the council to do any act as supplying the city with water, that the exercise of that power rests almost unlimitedly in the sound discretion of the council.   In the 16 L. R. A. 489, this language is used: "The making of contracts for the supply of gas or water is a matter delegated to the governing powers of a municipality to be exercised according to their own discretion; and in the absence of fraud, while acting within the authority delegated to them, their action is not subject to review by the court."—49 Am. Rep. 417; 30 Am. St. Rep. 221; 15 Am. & Eng. Ency. Law, 1046.   It would seem from the foregoing authorities that the instrument in question is a contract which is protected from impairment by both the Federal and State Constitutions; that the city had the power to make it, and that it is not void because it has a duration of thirty years.   The city of Gadsden could not repeal the ordinance granting franchises to the complainants.   The complainants had a contract which was executed and became binding upon them and the city of Gadsden from the date of the passage of the ordinance granting the franchise to them, in which ordinance was incorporated in the contract.—*Vincennes v. Citizens Gas Light & Coke Co.,* 16 L. R. A. 488; *Newport v. Newport Light Co.,* 84 Ky. 174; *City of Louisville v. Tribb,* 84 Ky. 290.

It will be noticed that this is not a case for the specific performance of a contract, which requires continuance administration of executory skill, discretion, personal supervision, etc., as decided in 94 Ala. 184 and 595.   The bill is not one at all to decree performance of a contract, but is one by injunction to prevent the destruction of contractural obligation.—23 Sou. Rep. 638; 112 Ala. 742; 98 Ala. 400.   The contract, too, is one ex-

ecuted so far as the city of Gadsden is concerned, the city having in grants to appellants done all that was required of it under the contract.

Another question in the case is the meaning and effect of the last clause of section 22 of the Constitution, which is: "And every grant or franchise, privilege or immunity, shall forever remain subject to revocation, alteration or amendment." Bearing in mind that it has been the policy of this State for years to protect from impairment the obligations of contracts, and that the provision to that end has been brought forward from the Constitution of 1875, this is evidently still the policy of the State under the present Constitution. This protection has heretofore applied to contracts between the State and municipalities, and natural persons, and we insist that, under a reasonable interpretation of section 22 as a whole, it will be held that this protection still applies to such contracts. Under this section all contracts are protected, yet it is made clear that the State has reserved to itself the right to repeal, alter or amend any franchise of a political nature, and possibly such property franchises as have not been contracted and conveyed away to third persons for a valid consideration. We believe, and therefore urge, that this is what the constitution-makers intended to make this section mean. *Atchison Ry. Co. v. Mo. Pac. Ry. Co.*, 31 Kan. 666; *Coast Line Ry. Co. v. The Mayor and Aldermen of the City of Savannah*, 30 Fed. Rep. 646; *VanHoffman v. The City of Quincy*, 4 Wallace 535. If it be the meaning of this section of the Constitution to reserve in the legislature or municipality the power of repealing a franchise that has been contracted and conveyed to a third person for a valid consideration, or one in furtherance of the objects of the grant, large sums of money have been invested, it certainly was not intended that this should be done without making just compensation for the vested rights and property destroyed by such repeal. To destroy these without compensation would be monstrous.—See *People v. O'Brian,* 111 N. Y. 1; same case 7 Am. St. Rep.

The bill simply seeks an injunction against the city preventing it from destroying contractual obligations

by hindering and preventing appellants from so using the streets, or from destroying appellant's easement in said streets. If the relief prayed for should be granted, the city would simply be restrained from destroying said easements, from interfering with appellants' use of the streets and thereby destroying contractual obligations. *Hendricks v. Hughes*, 23 Sou. Rep. 637; *Bienville Water Supply Co. v. Mobile*, 112 Ala. 260; *S. & N. R. R. Co. v. Highland Ave. B. R. Co.*, 98 Ala. 400. It is true that a court of equity will not undertake to enforce specific performance of an agreement which requires continuous administration of executory skill, discretion, personal supervision, etc., which would necessarily have to be exercised by the court, as decided in *Wingo v. Hardy*, 94 Ala. 184; *Bridgeport Land Co. v. Car Co.*, 94 Ala. 595. There can be nothing in the proposition that the grant of this right to use the streets was not supported by a consideration, and that, therefore, for this reason the relief prayed will not be granted. In consideration of this grant and the contract of the city to take water for a certain number of fire plugs for a period of thirty years at an agreed price, appellants agreed to erect water works and operate them for said period of thirty years, and for that time to furnish said city water for said fire plugs, also to furnish said city free of charge water for some five public fountains and watering places, for all the public buildings, including the school building, for sprinkling the streets and for flushing the sewers. For this long period of time it will involve a great outlay of money to furnish all this water which they have agreed to furnish free. Should appellants fail to comply with the terms of the contract they would undoubtedly be liable to damages to the city for the value of the water agreed to be furnished free of charge, if the city should keep its part of the contract. This being true, this grant is supported by a most valuable consideration. The payment in cash for said grant would not be a more valuable consideration.—On the equities of the bill we cite these further cases:—*Port of Mobile v. L. & N. R. R. Co.*, 84 Ala. 115; *Walla Walla v. Walla Walla Water Co.*, 172 U. S. 1. From the fore-

going it seems to us to follow that in the passage of the repealing ordinance the city attempted to impair the obligations of a contract, and that the court will so hold, and direct the relief prayed to be awarded.—*Western Savings Fund Co. v. City of Philadelphia,* 31 Pa. State Rep. 175.

J. J. WILLETT, BOYKIN & BRINDLEY and LEE & LEE, *contra.*—The only authority of the city of Gadsden to enter into this contract is found in the Acts of 1882-3, p. 292, which was, "To sink, repair and regulate public wells and cisterns, to establish and regulate fire plugs and public hydrants, and to make all needful provisions to supply the city with water, gas and gaslights, and to control street lamps." We submit that under this general authority the city of Gadsden was not authorized to grant exclusive franchises over its streets for a term of thirty years, and had no power to enter into any contract binding it for a term of thirty years, at fixed rates for the city and citizens, as will be shown by the following carefully considered opinions.—*Richmond County Gas Co. v. Middletown,* 59 N. Y. 228; *Flynn v. Little Falls Electric Co.,* (Minn.) 77 N. W. Rep. 38; Same *case,* affirmed on reargument, 78 N. W. Rep. 106; *Hall v. Cedar Rapids,* 88 Iowa N. W. Rep. 448; Am. Dig. 1902, A. 4396; *Greenville Water Works v. City of Greenville,* (Miss.) 7 Sou. Rep. 409; *City of Brenham v. Brenham Water Co.,* 67 Tex. 542; 4 S. W. Rep. 143; *Saginaw Gas Co. v. Saginaw,* 28 Fed. Rep. 529; *B'ham & Pratt Mines St. Ry. v. B'ham St. Ry.,* 79 Ala. 466; II Dillon on Municipal Corporations, § 716; *Grand Rapids Co. v. Grand Rapids,* 33 Fed. Rep. 659; *Long v. City of Duluth,* (Minn.) 1892, 51 N. W. Rep. 913; 32 Am. St. Rep. 547; 1 Beach on Municipal Corp., §§ 619, 620, 622 and notes; *Gale v. Kalamazoo,* 9 Am. Rep. 80; *Davenport v. Kleinschmit,* 6 Mont. 502; 20 Am. & Eng. Ency. Law (2d ed.) 865; *Smith v. Town of Westerly,* (R. I., 1896) 35 At. Rep. 526; *Detroit Ry. Co. v. Detroit,* 110 Mich. 384; St. Rep. 350; *Thrift v. Elizabeth City,* 122 N. C. 31; 30 S. E. Rep. 349.

[Weller *et al.* v. City of Gadsden *et al.*]

2. In *Danville v. Danville Water Co.*, 178 Ill. 299; same case, 69 Am. St. Rep. 304, which case was affirmed on writ of error from United States Supreme Court, in 180 U. S. p. 619, it was held that a statute empowering a city to authorize a private corporation to construct water works and to contract for a supply of water for not exceeding thirty years, gives the city no power to bind itself by *fixing a rate* which it must pay for such supply *for such entire period,* and an ordinance fixing a rate for the entire thirty years is void. And to the same effect are *Rogers Park Water Company v. Ferguson,* 178 Ill. 571, also affirmed in 180 U. S. 624; and *Freeport Water Co. v. Freeport City,* 180 U. S. 588. These authorities all go to show how jealously and closely a court scrutinizes the contracts of a city for water or gas or other public necessity, extending through a long term of years, and how strictly such contracts are construed against the power of the city to make such contracts.

(3.) "The grant of an exclusive privilege in the nature of a monopoly does not become a contract or vested right so as to be protected by the Constitution of the State or United States, until the company has begun to do the thing required by the charter as the consideration for the grant of such privilege."—*Capital City Light Co. v. Tallahassee,* 186 U. S. 411; *Capital City Light Co. v. Tallahassee,* (Fla.) 28 Sou. Rep. 810; 20 Am. & Eng. Ency. Law, (2d ed.) 868. The so-called contract with the city of Gadsden was nothing more than an offer which created no contract until accepted and acted upon, and until such time the offer may be withdrawn by a repealing ordinance.—*Logansport Ry. Co. v. Logansport City,* 114 Fed. Rep. 689.

(4.) The ordinance of the city of Gadsden not being founded on a good consideration paid, until acted upon and performed by the commencement of work, is a *nudum pactum,* and will be construed as a revocable license.—*Pearsall v. Great Northern Ry.,* 161 U. S. 667; *Bank of Commerce v. Tennessee,* 163 U. S. 425; *Adirondack Ry. Co. v. New York,* 176 U. S. 335; *People v. Adi-*

*rondack Ry. Co.,* 160 N. Y. 247; *Board of Commissioners v. Call,* 123 N. C. 323.

(5.)　In *Passaic Water Co. v. City of Patterson* (N. J.) 47 At. Rep. 462, it was held that the authority to supply the city with water gave the city council no authority to make a thirty year contract for the. *citizens* and *residents* of the city, such as was attempted to be done in the case at bar. And in the *Passaic Water Company* case it was, held that an important part of the ordinance being illegal, other connected parts must be deemed invalid, notwithstanding it was provided in the ordinance "should any portion of this ordinance or contract be invalid, so much thereof as shall not be invalid shall be and remain in full force and effect." In all the cases relied upon by the appellants the contracts were in a measure executed,—in the case at bar the contract is wholly executory. Not one dollar has been spent or incurred towards carrying out the provisions of the alleged contract.—*Clark v. Colbert,* 67 Ala. 92. The Supreme Court of Alabama has gone still further, and in *Bluthenthal & Bickart v. Town of Headland,* 132 Ala. 249, affirms the doctrine laid down in *Allen v. Town of Lafayette,* 89 Ala. 641, which draws the distinction between contracts made by cities, which are merely *ultra vires,* and those prohibited by law.

(6.)　Section 22 of the present Constitution provides "That no *ex post facto* law nor any law impairing the obligations of contracts or making any irrevocable or exclusive grants or special privileges or immunities shall be passed by the legislature, and every grant or franchise, privilege or immunity shall forever remain subject to revocation, alteration or amendment." The latter part of this section as to the grant forever remaining subject to revocation, alteration and amendment appears for the first time in the present Constitution. The action of the city of Gadsden in granting the complainants the exclusive right to use the streets of the city was unconstitutional and against that part of the Constitution which prohibits the granting of exclusive franchises, privileges and immunities, and under the decision in the *Birmingham Street Railway Cases,* 79 Ala.

474, the constitutional clause above quoted applies equally as well to municipalities as to legislative bodies. In that case the grant of an exclusive franchise by the city of Birmingham was declared void under the operation of Section 23, Article 1, of the State Constitution of 1875..

(7.) It is frankly conceded by counsel for appellants that the exclusive feature of the contract is illegal, but they insist that notwithstanding this the law will separate the illegal from the legal parts of the contract and authorize the enforcement of the contract as to that part which is legal  This rule does not apply, however, in the case wherein the entire contract is illegal, for where this is the case the entire contract is void..—*Wadsworth v. Dunnam,* 117 Ala. 662.  There is but one indivisible promise on the part of the city and that is upon consideration that complainants build the water works in accordance with the terms and conditions of the agreement, the city grants to them the exclusive franchise to use the streets for their water works.  The city thus promising to do that which is positively prohibited by the State Constitution as well as the common law, and which it had no power to carry into effect. The principle as laid down in Lawson on Contracts that in order to find consideration for a promise, it is necessary that the party by whom the promise is made have the power of carrying it into effect, and accordingly, that the thing to be done should itself be legal.  In accordance with this rule the city's promise to complainants is void on both these grounds.  All contracts hostile to or violative to the Constitution or laws of the State are offences against the public and declared policy of that State and are invalid and a recovery cannot be had upon them.  "The law will not allow a right to spring from its own deliberate violation, though not so declared in terms and though no penalty for doing the prohibited act is imposed."—*Jemison v. B. & A. R. R. Co.,* 125 Ala. 378; *Moog v. Hannon,* 93 Ala. 503; *Youngblood v. B'ham. Trust Co.,* 95 Ala. 521; *Woods v. Armstrong,* 54 Ala. 152; *Folmar v. Silver,* 31 South Rep. 720; *Hauerwas v.*

[Weller *et al.* v. City of Gadsden *et al.*]

*Goodloe,* 101 Ala. 162; *Robertson v. Hayes,* 83 Ala. 290; *Clark v. Colbert,* 67 Ala. 92.

TYSON, J.—By section 1 of an ordinance adopted November 11th, 1902, the governing board of the city of Gadsden, to obtain for the use of the inhabitants of that city a supply of water for all purposes, granted to R. A. Mitchell, his associates, successors or assigns "the right and privilege to construct, maintain and operate water works for public and private use of water within said city, for a term of thirty years from the date of the completion of said water warks," together with the right to lay pipes, erect hydrants, fountains and other structures and appurtenances, in any and all of the streets, alleys, lanes, parks and other public places of and in said city, as they then existed or might thereafter be laid out or extended, and as might be requisite for the distribution of water or the operation of said water works system.

By section 2 of the ordinance, it was provided that the condition upon which the foregoing privileges and franchises were granted, were made the subject of a contract between the said city and the grantees, which formal contract was thereby made a part of and embodied in the ordinance. After inserting the contract, it was, in conclusion, ordained "That the city of Gadsden, Alabama, hereby approves, ratifies and confirms the above ordinance and contract in all its terms and provisions," and it was further provided how the "ordinance and contract" should be executed, both by the city of Gadsden and the grantees and contractees, and it was duly signed and executed by both parties, in the manner prescribed by the ordinance; R. A. Mitchell "for himself his associates, successors or assigns," at the end of the ordinance, assenting in writing to all the terms of the ordinance contract, "with all its provisions, restrictions and requirements." In the formal contract, embodied in the ordinance, the undertakings of Mitchell and associates are set forth in ten paragraphs.

Briefly, and as far as now necessary, their obligations may be thus stated: (1) To supply pumping engines;

(2) to lay adequate mains; (3) when ordered by the city, to extend mains, and place additional fire hydrants thereon; (4) to furnish a supply of water from a designated source or sources, sufficient for present and future needs of the city and private consumers; (5) to place upon the lines of mains or distributing pipes not less than sixty (60) hydrants, at such points as the city authorities may direct, for public use only, the city to first establish grades of the highways before pipes are laid; (6) to begin construction of the system twelve months before the expiration of the existing contract of the city with the Gadsden Water Works Company, on or before January 1st, 1905, and to complete same ready for use by December 31st, 1905; (7) to discharge, when required, certain streams through hydrants and to maintain a certain pressure, which test, if successfully made, will entitle them to an acceptance of the works; (8) to furnish water for domestic and manufacturing purposes, at prices *not* exceeding a fixed schedule, and to furnish certain quantities of water for sprinkling, for drinking fountains, and for city buildings, free of charge; (9) to deposit a certified check, for one thousand dollars, to be forfeited if the work of construction is not commenced and completed within the stipulated time, which check, the bill alleges, was deposited by the complainants and collected by, the city.

Thereupon, in consideration of the agreements and obligations of the other parties (having already in section 1 of the ordinance made a simple grant of the right to construct and operate water works for thirty years, and to use the streets, etc., for pipes, etc.,) the city of Gadsden stipulated, in four paragraphs of the formal contract, embodied in the ordinance, as follows: (1) To grant the *exclusive* right to construct and operate water works in said city for thirty years from date of acceptance, with a proviso that the franchise and contract may be revoked at the option of the Mayor and Aldermen, whenever the works failed to furnish a proper and adequate supply of water and such condition continued for three months; (2) to grant the right to enter upon the streets, alleys, etc., to lay pipes, erect hy-

drants and do other necessary work of construction; (3) to pay an annual rental, for thirty years, of forty-two dollars for each of the first sixty hydrants set and put in use, and forty dollars for each hydrant on the extension of mains which the city may order; (4) to grant the right to make needful rules and regulations in regard to the use and waste of water, and to collect from consumers in advance a tariff of rates, not exceeding those specified. Delays in the beginning or completion of the work , due to certain named causes, are to operate as an extension equal to the time so lost.

The provisions of the contract which have mainly been the subject of discussion by counsel, are the grant of the franchise to use the highways and public places of the city for the operation of the water works and the delivery of the water to the city and its inhabitants, for the period of thirty years; the agreement that the grant of the right "to construct, maintain and operate water works, and conductors," for the like time, shall be exclusive; and the obligations of the city to use and pay for hydrants, at a fixed price, during the life of the contract. The contention of the city is that the agreement for the exclusiveness of the franchise, and the obligation to take water from hydrants for so long a time as thirty years, are both invalid and that they, one or both, so infect the entire transaction with invalidity, as to destroy all rights under the ordinance. It is further insisted by the city, that if the foregoing contentions are not sound, then the ordinance was a mere offer or proposition, supported by no consideration, and that it was subject, for that reason, to repeal at any time before work under it had actually begun; and, furthermore, that in any event, the franchise and contract were, by virtue of section 22 of the Constitution of 1901, subject to re-vocation by the city authorities, at the time of the passage of the repealing ordinance of June 1st, 1903.

Under the Constitution, (Sec. 220) and its charter power over its highways and public places (Acts, 1882-83, p. 292, Sec. 22, sub. Sec. 10,) the city of Gadsden had authority to grant to complainants, the right to contract and operate a system of water works, including therein

the right to use the streets, etc., for mains, pipes and hydrants.

By Sec. 228 of the Constitution, the period of thirty years is recognized as proper for the duration of such a franchise in towns and cities of more than six thousand population; *a fortiori* would it be unobjectionable in a town or city containing less than that number of inhabitants, as to which the section fixes no time limit? Even if it may be maintained that it would not be proper to bind a city to take water, at a fixed price, for so long a time as thirty years, the considerations leading to that conclusion would not be applicable to the grant of a franchise to operate the system for the same length of time, since the large expenditure necessary to such an enterprise would scarcely be made for a franchise of shorter duration.

Whatever may be said as to the agreement to pay for hydrants, at a fixed price, for thirty years, and whatever conflict may exist in the authorities, as to the extent to which a court should go, in reviewing the discretion of a city council, in naming a fixed time and price for a water-supply contract, it is settled that under a charter, authorizing a city "to make needful provisions to supply the city with water" (charter of Gadsden Acts, 1882-3, p. 292), its authorities may make such a contract, which will be valid, if not for the whole period, at least for a reasonable length of time. We so expressly decided in *The City of Greenville v. Greenville Water Works Company,* 125 Ala. 625. The proper duration of this part of the city's obligation is not now material to be determined. That question will not be vital until after the works shall be built and the city, after use of the water for some period, shall claim a reasonable time has elapsed, and cease taking the water, or seek to compel a furnishing of water at a lower rate. Should this situation arise, the agreement, in this particular, will be declared invalid simply for the excess, if any, beyond the permissible reasonable limit.—*Robertson v. Hayes,* 83 Ala. 290.

The agreement of the city that the grant of the franchise to complainants should be exclusive, (meaning

thereby, that the city will not itself compete in the business, nor confer a similar franchise upon another), is conceded to be *ultra vires,* and all benefit therefore has by the bill, been expressly waived by the complainants; yet that clause of the contract is dormant and entirely innocuous until occasion arises for calling into play the rules of law against such exclusive feature. That time may never come; if it does, the clause now under consideration will form no obstacle in the way of a second grant to another or of the exercise by the city of the right to operate a system of its own.

As said in *Illinois Trust & Savings Bank v. Arkansas City,* 76 Fed. 271, 281, cited in the Greenville Water *Works case, supra*: "The city is not endeavoring to construct water works or to lay pipes in its streets, in violation of its exclusive grant to the company, nor is any one attempting to do so, under its license or by its permission. No one seeks to infringe this exclusive grant. In practical effect, it stands unchallenged and may ever continue so. Until it is challenged by the act or endeavor of some one who seeks to infringe it, its validity or invalidity is a moot question, on account of which the courts ought not to, and will not, avoid any part of the contract." Furthermore, the two clauses of the agreement, against which counsel for the city have inveighed, are severable and distinct, and their presence in the contract furnished no reason why the grant of the franchise to operate a system of water works should fall to the ground. It does not lie in the mouth of the city to say, that because it may have contracted beyond its authority, in one or even two particulars, it, therefore, granted and contracted for nothing. The provisions assailed were both for the benefit of the complainants, and if those portions are eliminated, the result simply is that the city obtains a better contract than it was willing to make.

The ordinance contract, assented to in writing by both of the parties, derives its force from such assent, rather than from its mere passage in the manner required for ordinances, which prescribe rules of conduct for those within the jurisdiction.

42

It was not a *nudum pactum,* nor a mere offer or proposition, nor a simple license; it was a contract, containing mutual agreements, supporting and supported by each other. The obligation therein assumed by complainants, to erect and operate the water-works system and to furnish certain water free of charge, secured in part at least by the deposit of one thousand dollars, or its equivalent, which was turned into cash, furnished a present adequate consideration for the grant by the city of the thirty-five year franchise (a franchise being necessary to enable complainants to comply with their agreement to furnish water) as well as for its obligation to pay for the hydrants at least for a reasonable time, conceding, for the sake of argument merely, that thirty years exceeded a proper period.

The contract which the parties executed, although in the form of and called an ordinance, was entered into by the city, in the exercise of its administrative or business powers, rather than under its governing or purely law-making authority.—*City of Greenville v. Greenville Water Works Company, supra; Ill. Trust & Sav. Bank v. Arkansas City, supra;* I Dillon on Mun. Corp. (4th Ed.) Sec. 66.

It was not, therefore, even if executory, repealable, like a mere act of legislation or an ordinance, pure and simple, at the will of the enacting power.—*Safety Wire & Cable Co. v. City of Baltimore,* 66 Fed. 140.

A valid contract, entered into by a municipal corporation, may no more be repudiated, without just cause, than the contract of a private corporation or individual *City of Indianapolis v. Gas Light Co.,* 66 Ind. 396; 2 Dillon on Munic. Corp. Sec. 935.

The same thing may be said of the valid portions of the contract of a municipal corporation, containing a severable invalid clause, where, as here, the provision for exclusiveness of the grant is not immoral nor illegal, but merely *ultra vires,* its want of enforcibility growing out of the fact that power to make the grant exclusive has not been conferred upon the city by the legislature and under constitutional inhibitions could not be conferred.—*Birmingham Street Railway Case,* 79 Ala. 465.

Section 22 .of the Constitution of 1901, provides that "no *ex post facto* law, nor any law, impairing the obli-gations of contracts or making any irrevocable or exclu-sive grants of special privileges or immunities shall be passed, by the legislature, and every grant of a franchise, privilege or immunity shall forever remain subject to revocation, alteration or amendment."

The concluding clause, which first appeared in the constitution of 1901, is relied on to sustain the ordi-nance, purporting to revoke the rights of complainants, under this contract. It is obvious that this section re-fers to laws and grants made by *the legislature,* and to revocations, alterations and amendments by *the legis-lature,* or perhaps by its authority of grants of franchis-es, privileges and immunities, made by that body. No such revocation of the ordinance contract of the city of Gadsden has been attempted by the legislature, nor has that body conferred or attempted to confer on the city authorities the power to revoke such a contract, even if it be true that the contract of the city, containing, among other things, a grant of a franchise founded on a valuable consideration, and necessary to enable the gran-tees to perform their obligation to furnish water, is such a grant of a franchise as comes within the contemplation of section 22, and thus within the power of the legisla-ture to revoke—a proposition we do not wish to be un-derstood as deciding or admitting.

It would be unwise, and it is unnecessary, to now un-dertake to ascertain the full scope and purpose of the concluding clause of said section or to define the grants of franchises, privileges, or immunities that may fall within its influence. Its full meaning may be best de-veloped as cases arise, in which its application is in-voked. Suffice it here to say, that no matter what else it may mean and no matter what grants or franchises are thereby made to rest upon the continuing grace of the legislature, section 22 was not intended to make mu-nicipal contracts, including valid grants of franchises for public utilities, supported by a valuable considera-tion, depend upon the constant favor of a city council or subject to the whims and caprices of successive city

governmental officials. To sustain the contention of the city on this point would practically destroy all hope of interesting investors in the useful and necessary public enterprises, and cast upon the towns and cities of the state the burden of constructing water-works and the like modern conveniences, by the expenditure of public funds. This burden by reason of their limited debt—contracting and revenue—raising power, the smaller towns and cities, at least, would, in most instances, probably be unable to bear. If the convention had intended the obvious and unfortunate result, it is most likely that the clause would have been the subject of some discussion by the members of that body, and the intent would not have been left to be inferred, from the general language of a section referring entirely to the state legislature.

The ordinance, under which the complainants claim, as we have said, is more than a mere grant of a franchise; it is a contract and must be treated as such. *Vincennes v. Light Co.*, (Ind.) 16 L. R. A. 485.

The conclusion is, that the ordinance contract, under which complainants claim, is not void *in toto*, that it confers valuable rights, that the so called repealing ordinance was utterly ineffectual to impair the contract in so far as it was valid, and that in so far as the contract was unauthorized, a repealing ordinance was wholly unnecessary. In other words, the ordinance, attempting to repeal the franchises and rights conferred on complainants, was void and of no effect on its face, as the bill alleges.

It would unduly extend the opinion to review the cases cited on behalf of the city, in support of its several contentions. An examination of them will disclose that they are not in conflict with the principles we have applied, when the peculiar facts of those cases are considered, and note is taken of the manner in which, and the parties between whom, the controversies were presented.

We may remark, however, that in *Capital City L. & F. Co. v. City of Tallahassee*, (Fla.) 28 So. Rep. 810; s. c. 186 U. S. 401, so much relied on by the counsel for appellee, to sustain the proposition that the franchise

is revocable at any time before work is actually begun, or money invested in a plant, the court was dealing with an ordinance for which there was no consideration and by which no obligation was imposed on the city to take electric lights from the Light & Fuel Company. The case is also distinguishable from this one in other particulars.

In enterprises of such magnitude as the construction of water works, a preliminary period of preparation is absolutely necessary, and the fact that work is to begin at a future fixed time, the agreement to begin and complete the work being absolute, furnishes no reason in law or justice, why during that interval the obligation of the contract should be subject to the repudiation, either by an individual or a municipality.

The last question is, whether in view of the nullity of the ordinance, assailed by the bill, a resort to a court of equity by the complainants, under the circumstances disclosed, is either proper or necessary. This question has not been discussed by counsel for the city, who have confined themselves to insisting that the ordinance contract was totally invalid, and that, at all events, the city had the right to repeal or revoke it, before work was begun. It necessarily arises, however, and must be decided, upon the motion to dismiss for want of equity; for although the rights of appellants are declared, in arriving at the ultimate conclusion here reached, it would be idle to return the case to the court below, merely for the purpose of having a decree, nullifying that which appears on its face to be void.—6 Am. & Eng. Ency. Law (2nd Ed.) 155; *Meloy v. Daugherty,* 16 Wis. 269.

In the fourth paragraph of the bill, it is alleged in general terms that "the board of aldermen are threatening and endeavoring and attempting to breach said contract and repudiate the same, by preventing orators from using said streets, avenues and alleys for the purpose of laying said water pipes, mains, etc.," but at the close of the same paragraph there is a specification under this general allegation that "The said Mayor and Board of Aldermen attempted to deny and deprive ora-

tors of the use of said streets, avenues and alleys in a particular way, that is, "by the passage of an ordinance, a copy of which is hereto attached, marked exhibit B." It will be noted that the time for beginning work, and for the actual enjoyment of the franchise has not arrived and the bill does not aver a readiness or an offer to begin work, nor any application to the city to fix grades or designate streets, wherein mains are to be laid, nor any threatened act of interference with anything complainants desired to do or that they had a right to do. Obviously, the bill simply makes a case of the passage of a void ordinance, which does not even cast a cloud on their franchise or contract, it not being necessary to introduce evidence to demonstrate its invalidity.—*Parker v. Boutwell,* 119 Ala. 297; *Borst v. Simpson,* 90 Ala. 373.

Counsel on both sides in their briefs treat the case upon the theory that nothing further was done by the city than to pass the ordinance. It is conceded by complainants that this is not a bill for specific performance. It is said to be one "to prevent the destruction of contractual obligations," and is treated also by their counsel as one to protect a franchise. In support of its equity, four cases are cited.—*S. & N. R. Co. v. Highland Avenue & Belt R. Co.,* 98 Ala. 400; *Bienville Water Co. v. Mobile,* 112 Ala. 260; *Port of Mobile v. L. & N. R. Co.,* 84 Ala. 115; *Hendricks v. Hughes,* 117 Ala. 591. But each of them was a case, wherein there was a threatened invasion by some special act of interference with a right or franchise then being enjoyed or exercised. When Mitchell and associates, their successors or assigns, are ready to begin work under their contract, the void ordinance will be no obstacle, and if any interference with their rights is then threatened, it will be time enough to resort to judicial proceedings, and to consider what the remedy shall be. The repealing ordinance prescribed no penalties, and, in and of itself required no affirmative action, hostile to the rights of the complainants, on the part of the mayor or other officers or agents of the municipality.

The bill, therefore, is without equity. As the Supreme Court of Iowa said in *Des Moines Gas Co. v. City of Des*

*Moines*, 24 Am. Rep. 756: "If the ordinance sought to be enjoyed is void, by reason of its unconstitutionality, the plaintiff can be in no wise injured by its passage. A void law is no law, and this without doubt is true as to an ordinance. No injury—much less one of an irreparable character—can be inflicted by such an ordinance." It is only when the invalid ordinance is sought to be put in force or its enforcement is threatened to the injury of a right or franchise, then being enjoyed or sought to be exercised, that resort to a court for protection is necessary; and then relief is granted; not against the void ordinance, but against the wrongful act, which threatens invasion of the right.

The city court dismissed the bill for want of equity, though not for the reasons, here given. Its opinion was favorable to the city, upon the merits of the controversy, but while its reasoning was erroneous, the decree of dismissal was correct.

In view of the proper dismissal of the bill for want of equity, it is not necessary to consider the rulings upon the demurrer.

Affirmed.

MCCLELLAN, C. J,. HARALSON and DOWDELL, J. J.

If the ordinance which the bills seeks to have expunged is a valid ordinance, of course the complainants are not entitled to the relief prayed for. On the other hand, if that ordinance is invalid it is innocuous to the alleged rights of the complainant, as declared in the opinion of Justice Tyson, and complainants for that reason have no standing in a court of equity to have it expunged. Upon these considerations we concur in the conclusion of Justice Tyson that the bill was properly dismissed for want of equity; but we neither concur in nor dissent from the other views expressed by him, the case, to our minds, not requiring any decision or expression as to the ultimate rights of the parties.

SHARPE, J., not sitting.