This case arises from a dispute between the City of Pell City and landowners over a 1990 City ordinance that cut off water and other services to new customers whose property was located beyond the City's corporate limits. The City of Pell City, its mayor, and its building inspector (hereinafter together referred to as "City") sought a declaratory judgment to determine whether the City's actions in enacting and enforcing the ordinance caused the City to be liable to Beverly and Roddy Barber and Amatex, Inc., the Barbers' development corporation (hereinafter together referred to as the defendants). In the complaint for a declaratory judgment, the City alleged that the defendants had water meters placed on their property located within the city limits, with the intention to extend City water service to a house and property that were outside the city limits. The City alleged that it was not required to extend water and other services to the defendants' property because the property had been expressly declared to be outside the city limits, by order of the United States District Court for the Northern District of Alabama. The trial court entered a summary judgment for the City and the defendants appeal. The parties raise several issues:
(1) Whether a release executed by the City and Beverly Barber in 1988 has preclusive effect as to the counterclaim made by the defendants in the 1990 federal action, which was later remanded to the St. Clair Circuit Court and which forms the basis for this action.
(2) Whether the mayor and the building inspector are immune from suit based upon qualified or good faith immunity.
(3) Whether the ordinance withdrawing water service from the defendants' property violated the procedural due process guarantees of notice and an opportunity to be heard.
(4) Whether the City is estopped from halting services to the defendants' property, which they claim was allegedly developed in reliance on the availability of city water service.
(5) Whether the defendants preserved for appeal their arguments of estoppel and due process violations.
(6) Whether the City's action in enacting the ordinance violates the Equal Protection Clause of theFourteenth Amendment to the United States Constitution.
 Facts
Between 1984 and 1986, the defendants purchased four adjacent parcels of land in St. Clair County. It appears from the record that some of the land is within the Pell City corporate limits and that some of it is outside. The defendants subdivided the land and built houses on two lots, which they subsequently sold. The defendants received a water permit from the City, and the City installed water meters to service the two improved lots. After the first two houses were sold, the defendants decided to develop the remaining land as a subdivision, which they called "Shadowood." A small triangular-shaped strip of the defendants' land, called "the triangle," served as the common location for the water meters that served the first two houses built by the defendants and those that were subsequently built as part of the Shadowood subdivision.
The defendants then began to build houses in Shadowood. The defendants built the first house within the City's corporate limits, and during the construction of the second house, a dispute arose as to whether the lots were within the City's corporate limits and whether the Barbers were required to obtain building permits. The City contended that although the second house was outside the city limits, a building permit was nonetheless required. Since the City had not issued a building permit, the City issued a "stop-work" order for the project. As a result of that dispute, Beverly Barber in 1987 filed an action in a federal court against the City, the mayor, the building inspector, and the members of the city council. It appears from the record that Beverly Barber was the sole plaintiff in the 1987 litigation. In her 1987 *Page 535 
action, Beverly Barber alleged, inter alia, that the City's 1969 annexation of her property was invalid because, she said, the City had failed to comply with the preclearance requirements of the federal Voting Rights Act. She also contended that the City's stop-work order on the second Shadowood house, based on her noncompliance with the City's building code, was a "taking" in violation of the Equal Protection and Due Process Clauses of the United States Constitution.
After a hearing on the Voting Rights Acts issues by a three-judge panel designated by the Eleventh Circuit Court of Appeals, the district court entered an order stating that the parties had agreed that the City did not preclear the annexation with the Department of Justice, but had agreed that the annexation would "shortly be cleared, and that the annexation [would] thereafter comply with the Voting Rights Act." Consequently, the court dismissed with prejudice Beverly Barber's Voting Rights Act claims and determined that the subject property was "not located within the corporate limits of . . . Pell City."
Beverly Barber amended her 1987 complaint to allege that the City had refused to provide water to her property located outside the City limits. She stated:
 "25. The refusal of the City to provide city water service to plaintiff is violative of the equal protection clause of the Fourteenth Amendment to the Constitution of the United States. Plaintiff also avers that the defendants' refusal to provide her with city water service is unlawful retaliation against her for having instituted this action. . . ."
Thereafter, the parties entered into settlement negotiations, and they eventually settled their remaining claims in December 1988. In its final order, the district court enjoined the City from interfering with ingress to and egress from Beverly Barbers' "metered" property by the routes previously employed for the delivery of any and all city services to the property. The 1987 litigation was terminated when Beverly Barber and the City executed a "Joint Release and Settlement Agreement," with Beverly Barber receiving $40,000 from the City. In pertinent part, the agreement states:
"1. Plaintiff hereby:
 "(a) Forever waives, discharges and releases Defendants, their agents, servants, employees, members and assigns, from any and all claims, charges, suits, complaints and/or grievances which plaintiff has, had or may have before any federal, state, local or private court, agency, arbitrator or other entity whether for declaratory or injunctive relief, compensatory or punitive damages, and/or any other relief or remedy, at law or in equity, arising from, ownership of property, malicious prosecution, denial of equal protection of the laws or otherwise, to and including the date of this agreement.
 "(b) Agrees not to file, make, press, pursue, any claim, charge, suit, complaint or grievance against Defendants."
The property that was the subject of the 1987 litigation was later purchased by the Etheredge family and is referred to as "the Etheredge property." Sometime after the resolution of the 1987 dispute, the defendants approached the mayor about extending water service to the Etheredge property, which was located outside the city limits. The mayor approved the installation of a water meter to service the Etheredge property and the City installed the meter for the Etheredge property on the triangle. The defendants then installed a water pipe from the meter to the Etheredge property. Subsequently, the defendants received water permits and had two more water meters installed on the triangle to serve two houses they planned to build. Prior to the completion of the houses to be served by the newly installed meters (and before water service was actually initiated), the Pell City council passed Ordinance No. 90-913, from which the present dispute arose. The ordinance, enacted April 23, 1990, states in part:
 "1. No services of any kind, character or nature, including but not limited to water, sewer, garbage collection, police protection or fire protection, shall be extended to any real property, person, firm, corporation or other entity located outside the corporate limits of the City of Pell City, Alabama." *Page 536 
The ordinance contained a provision that exempted from its application those already receiving such services from the City as of the date the ordinance became law. About a week after the ordinance became law, the City removed from the triangle the meters that had been installed for the defendants more than a year earlier. Shortly thereafter, pursuant to § 6-6-223
Ala. Code 1975, and Rule 57, Ala.R.Civ.P., the City sought a judgment declaring the ordinance valid, both generally and as applied to the defendants. The defendants removed the City's action to the United States District Court for the Northern District of Alabama and filed a counterclaim pursuant to42 U.S.C. § 1983, seeking equitable relief and damages. The City moved the district court to remand the case to the St. Clair Circuit Court on the grounds of lack of federal subject matter jurisdiction. The motion to remand was initially denied by the federal district court, but was subsequently granted. Before the case was removed to circuit court, the district court entered an order declaring the defendants' property to be outside the city limits. The circuit court entered a summary judgment for the City based on qualified immunity and based on the court's finding that the 1988 release executed between Beverly Barber and the City barred the defendant's 1990 counterclaims.
 I
We first address the question whether the 1988 release executed between Beverly Barber and the City precludes the defendants from pursuing the claims set out in their 1990 counterclaim. The City argues that the defendants are barred by the doctrine of res judicata from relitigating issues that it says were raised or should have been raised in the 1987 federal litigation. Moreover, the City contends that the 1988 "Joint Release and Settlement Agreement" between Beverly Barber and the City is an accord and satisfaction and effectively bars the defendants from relitigating their claims.
The doctrine of res judicata is a well-established principle of law:
 "The elements of res judicata are: the same parties, the same subject matter, and a judgment on the merits by a court of competent jurisdiction. First State Bank of Altoona v. Bass, 418 So.2d 865
(Ala. 1982). Once these elements are met, the former judgment becomes an absolute bar to any subsequent suit on the same cause of action. Dominex, Inc. v. Key, 456 So.2d 1047 (Ala. 1984)."
Ex parte State ex rel. Harrell, 588 So.2d 868, 869
(Ala. 1991). "If these elements are present, then any issue that was, or could have been, adjudicated in the prior action is barred from further litigation." Croft v. Pate, 585 So.2d 799,800 (Ala. 1991). It appears from the record that although Roddy Barber was not a party to the 1987 litigation, the court held that the 1987 litigation involved the same parties as the 1990 action. Therefore, because a judgment was entered on the merits by a court of competent jurisdiction, the only issue regarding the doctrine of res judicata is whether the defendants' claims were presented or could have been presented in the 1987 action.Karagan v. City of Mobile, 544 So.2d 872 (Ala. 1989). The same cause of action exists when the same evidence applies in both actions. Waters v. Jolly, 582 So.2d 1048 (Ala. 1991).
In the 1987 litigation, Beverly Barber alleged that it was a violation of the Equal Protection Clause for the City to refuse water service to her land that was located beyond the City's corporate limits. The 1990 litigation involves a similar question by the defendants, but the cause of action is not the same. The 1990 action involves claims by the defendants that the City violated their federally protected rights when it passed an ordinance and then removed water meters for which they had obtained permits and paid fees. Although city water service is involved in both cases, the question of whether the water meters were lawfully removed was not litigated in the 1987 action; therefore, the second element set out in FirstState Bank of Altoona v. Bass (cited in the quotation fromHarrell, supra) is not present. We hold that the doctrine ofres judicata does not bar the defendants' claims in this case.
 II
The City also argues that the defendants are barred by accord and satisfaction *Page 537 
because of the 1988 "Joint Release and Settlement Agreement." This Court has written: "The elements necessary to establish accord and satisfaction are as follows: (1) proper subject matter, (2) competent parties, (3) assent or meeting of the minds, and (4) consideration." Austin v. Cox, 492 So.2d 1021,1022 (Ala. 1986). However, we have also written:
 "It is well established in Alabama that when an instrument is unambiguous its construction and legal effect will be based upon what is found within its four corners. The determination of whether an instrument is ambiguous is a question of law for the court to decide. Only when the trial judge has ruled that the instrument is ambiguous in its terms as to the intent of the parties will it be submitted to a jury."
Austin v. Cox, 523 So.2d 376, 379 (Ala. 1988) (citation omitted.)
The 1988 agreement between Beverly Barber and the City states in part that Barber "waives, discharges and releases [the City] from any and all claims . . . which [Beverly Barber] has, hador may have . . . arising from, ownership of property [or] . . . denial of equal protection . . . to and including the date ofthis agreement." (Emphasis added.) The defendants allege that this language creates an ambiguity. We agree. The release was dated December 18, 1988, and the meters were removed from the defendants' property on May 7, 1990. The release does not contemplate future action, but action "to and including the date of this agreement." The water meters were installed on the defendants' property sometime in April 1989 and were removed by the City in May 1990. Therefore, we conclude that the 1988 release does not constitute an accord and satisfaction.
 III
The next issue we address is whether the City officials are immune from suit based upon qualified or good faith immunity. Although the law extends immunity to municipalities in certain contexts, the law also recognizes that "[a] municipal corporation, which supplies its inhabitants with water, does so in the capacity of a private corporation, and not in the exercise of the power of local sovereignty." City of Montgomeryv. Greene, 180 Ala. 322, 60 So. 900 (1913) (citations omitted). Municipalities stand upon the same footing in this respect as would an individual or a private corporation. Id. " 'In contracting for water works to supply itself and its inhabitants with water, the city is not exercising its governmental or legislative powers, but its business or proprietary powers. The purpose of such [a] contract is not to govern its inhabitants, but to obtain a private benefit for the city itself and its denizens.' " Weller v. City of Gadsden,141 Ala. 642, 645, 37 So. 682, 685 (1904), quoting 1 Dillon on Mun.Corp. § 27.
In Birmingham Water Works Co. v. Ferguson, 164 Ala. 494,51 So. 150 (1909), a case dealing with water service, an individual sued a municipal water company for breach of contract when the water to the plaintiff's residence was shut off without notice. At issue was whether there was a contract between the water works and the customer. This court concluded, "Whether or not the contract existed depended upon oral testimony, and it was a proper question for the determination of the jury." 164 Ala. at 503, 51 So. at 153. The defendants allege that a contract was formed between them and the City when the City agreed to install water meters on their property. Whether such a contract was formed is a fact question for a jury to decide.
In reviewing a summary judgment we take into account the same factors that the trial court considered, see, e.g., Havens v.Trawick, 564 So.2d 917, 919 (Ala. 1990), and we resolve all reasonable doubts in favor of the nonmovant. Id. The movant has the initial burden of showing that no genuine issue exists as to any material fact and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala.R.Civ.P. If the movant makes this prima facie showing, then the burden shifts to the nonmovant. E.g., Maharry v. City of Gadsden,587 So.2d 966, 968 (Ala. 1991). For actions brought after June 11, 1987, the nonmovant must offer "substantial evidence" to overcome the prima facie showing, see Ala. Code 1975, § 12-21-12; substantial evidence is "evidence of such *Page 538 
weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co.of Florida, 547 So.2d 870, 871 (Ala. 1989). Our review is denovo. See, e.g., Maharry, 587 So.2d at 968.
The defendants allege that the City agreed to install water meters on their property with knowledge that the defendants planned to extend City water service beyond the City's corporate limits. Despite this knowledge, the defendants say, the City agreed to install the meters. The meters were in place on the defendants' property for more than one year before the City passed Ordinance No. 90-913. The defendants allege that the meters were suddenly removed from their property about one week after the ordinance was enacted and that this removal occurred without notice or an opportunity to be heard. Moreover, the defendants allege that the City provides water to other customers beyond the City's corporate limits, but refuses to extend the "grandfather" clause of the ordinance to their situation and that the City's refusal, in part, is in retaliation for Beverly Barber's 1987 litigation.
Resolving all reasonable doubts in favor of the nonmovant, we conclude that the City did not meet its initial burden of showing that no genuine issue exists as to any material fact. Because we must hold that the summary judgment was entered in error, we need not address the remaining arguments advanced by the parties. Accordingly, the summary judgment is reversed and the cause is remanded.
REVERSED AND REMANDED.
HORNSBY, C.J., and ALMON, SHORES, HOUSTON and STEAGALL, JJ., concur.